J. W. MARTIN, ET AL. *v.* M. A. MARTIN.

[Abstract Kentucky Law Reporter, Vol. 5—318.]

**Execution and Delivery of a Deed.**

Where one purchases land and the seller conveys it to him by deed in fee simple and the deed is delivered to and accepted by the grantee, it is effective, and the delivery to such grantee at his request of a second deed thereafter conveying to him a life estate with the fee to his children by his first wife is void, and the destruction of the first deed after its acceptance will not change matters any.

**Wife's Interest in Husband's Real Estate.**

The moment a husband accepts a deed in fee simple to real estate his wife becomes invested with potential right to dower which can not be defeated by the destruction of such deed by the husband and by his procuring his grantor to make him another deed to the same real estate for his life with fee to others.

APPEAL FROM HARRISON CHANCERY COURT.

October 4, 1883.

OPINION BY JUDGE HARGIS:

The appellee, having children by her first husband, intermarried

in 1846 with James H. Martin, who was the father of appellants by his first wife. He died in the year 1880 without children by the second marriage and in possession of 203½ acres and 17 poles of land which he had bought, by executory contract, in the year 1847, and occupied as a homestead until his death. His widow, the appellee, who is in possession of the dwelling-house and curtilage, brought suit for dower in the land. She alleged, in substance, that her husband had accepted a fee-simple deed for the land, which Bedford and wife executed and acknowledged and delivered to him in the year 1859; that he afterwards destroyed that deed and procured Bedford, from whom he bought the land, to make him another deed conveying to himself an estate for life with remainder to his sons, the appellants, and that this was done by her husband in fraud of her marital rights. The appellants controverted the delivery of the fee-simple deed and denied its destruction. They also pleaded inconsistently that she had made a postnuptial contract with their father in which she agreed to surrender her marital rights in the land in consideration of the privilege of advancing to her children the property which she received from her first husband's estate and by descent; and that the deed in remainder was made to them upon a valuable consideration consisting of work and services done by them for their father.

The evidence of Bedford and wife proves, with other facts and circumstances in the case, that the executory contract bound Bedford to make to Martin a fee-simple title, and that he did execute and deliver to him a fee-simple deed, which was duly acknowledged by Bedford and wife and read over slowly and carefully by Martin, who pronounced it a good deed and put it in his pocket. Bedford and wife were called on by Martin either the next morning, or as Bedford states it might have been several weeks afterwards, and asked to make him a different deed, which Bedford first declined to do but finally did so on condition that the deed should have added to it that it was made to all the grantees at Martin's request.

The record tends strongly to show that Martin had gone home with the first deed and then had the second written and returned with it in his possession ready to be executed by Bedford and wife. It was added to as stated, which is a potent fact towards showing that Martin had been home and gotten Mrs. Trimble to write it. If he had the second deed with him when he first went to Franklin

county to get Bedford to execute it, why did he not present it and have it executed instead of a fee-simple deed? Had he put himself to that much care to avoid receiving a deed according to the terms of his purchase, he certainly would have explained that fact to Bedford and not accepted the first deed, which could not possibly be written so as to convey to him a life estate with remainder to the appellants, unless Bedford or the draftsman knew what Martin wanted.

But whether the second deed was made next morning or on a second trip several weeks after the execution of the first makes no material difference, as the fact of execution and delivery is the vital question and not the length of time elapsing between delivery and acceptance and a change of mind. That the first deed was delivered by Bedford and read over and accepted by Martin there is no room to doubt, unless Bedford had deliberately committed perjury. He is sustained by his wife, the preparation of the second deed by Trimble, the interlineation at its close in a different handwriting from that of Trimble, the enlightening significance of the language of that interlineation and the inability of Martin to read to do much good, which accounts for the slow and careful way in which Bedford states he read it. The inherent probability of the truth of Bedford's evidence is exceedingly strong and convincing. When the evidence fails to show the slightest ground for believing that the appellee had agreed to the second conveyance, and that her property was principally used by Martin and his son, and some of her children got comparatively nothing from her, we are bound to view the claim for work and services to be rendered by "boys who were greatly under twenty-one years old and owed such services to their father," with great circumspection when such claim is attempted to be set up as a consideration that will deprive a widow of dower who has never consented to its loss or waiver.

The moment Martin accepted the first deed conveying to him a fee-simple title she became invested with a potential right to dower which could not be defeated even if Martin did afterwards sell the remainder to his boys in consideration of work, which he was otherwise entitled to, unless she duly signed and acknowledged the conveyance according to the statute. He was seized in fee, during the coverture with appellee, of the land named and died in the possession of it as a homestead, and she was thereby invested with right

to dower, which can not be defeated by the fact that a lot of an acre or two was plowed up and a few apple trees were trimmed within the curtilage, on the ground that waste forfeits the thing wasted, for she has the right to the possession of the curtilage until dower is assigned her, and the plowing and trimming according to the evidence did not amount to waste in view both of the manner in which they were done and the necessities of the widow, which grew out of the delay resulting from an illegal and unsustained attempt to defeat her right to dower which the court below properly adjudged in her favor.

Wherefore the judgment is *affirmed.*

*A. H. Ward, L. Desha, Jr., for appellants.*

*J. Q. Ward, for appellee.*